UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GAIL SIRAGUSA,**<br><br>　　　**Plaintiff,**<br><br>　　v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>　　　**Defendant.** | Civ. No. 2:13-cv-03814 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

　　Plaintiff Gail Siragusa brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Social Security Disability Insurance benefits ("SSDI"). Siragusa asserts that the decision was not based on substantial evidence. Compl. (Docket No. 1). For the reasons set forth below, the decision of the Commissioner is affirmed.

### I.　Background

　　Siragusa seeks SSDI for a period of disability from September 1, 2008 to October 4, 2011. Record (Docket No. 5-2) at 17. Administrative Law Judge ("ALJ") Richard L. De Steno denied Siragusa's claim in a decision dated October 4, 2011. R 1. Through her attorney, Gabriel Hermann, Siragusa appealed the decision to the Appeals Council on December 2, 2011. *Id.* at 11. In a letter dated April 23, 2013, the Appeals Council denied the appeal, making the ALJ's decision the "final decision" of the Commissioner.[1] *Id.* at 1.

　　Siragusa appeals the decision of the Commissioner. She asserts that the ALJ did not properly consider the evidence of her disability, based on two claims of error: (1) that the ALJ failed to properly analyze her credibility,

---

[1]　The letter noted that the Council reviewed additional evidence submitted by Siragusa after the ALJ's decision. *Id.* at 2. That additional evidence covered the period from October 4, 2011 to February 23, 2012, and thus was not considered for Siragusa's claim of disability before October 4, 2011. *Id.*

1

including corroborating evidence; and (2) that he did not give sufficient weight to the opinion of her treating physician, Dr. Chen. Pl. Br. (Docket No. 10-1) at 2.

## II. Standard of Review

As to legal issues, this Court's review is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to the factual findings of the Administrative Law Judge ("ALJ"), however, this Court is directed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *accord Richardson v. Perales*, 402 U.S. 389, 401 (1971).

> [I]n evaluating whether substantial evidence supports the ALJ's findings . . . leniency should be shown in establishing the claimant's disability, and . . . the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). When there is substantial evidence to support the ALJ's factual findings, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)).

## III. Evidence Considered by the ALJ

ALJ De Steno set forth the following evidence in his decision (consistent with the underlying exhibits unless otherwise noted).[2]

---

[2] In this section, III.A, the material in [brackets] is in the record, but was not specifically referred to by the ALJ in his decision. I have considered the omitted material, but I do not find that it would affect the outcome. Specific items stressed by Ms. Siragusa on appeal are discussed at Section V, *infra*.

2

## A. Medical Evidence

### 1. Heart

A September 2008 progress note from Dr. David Israelowitz [Siragusa's General Practitioner at New Jersey Physicians LLC] indicated that Siragusa was diagnosed with mitral valve prolapse, which was stable and asymptomatic. R 18 (citing Exs. 1F, 5F, 9F).

### 2. Back Pain

A June 2009 progress note [from Dr. Chen at New Jersey Physicians LLC] indicated that Siragusa had low back pain, which began 5 years prior and had recently become worse. R 18 (citing Exs. 5F, 9F). She asserted that her pain was at worst a seven on a ten point scale. *Id.* The pain was allegedly aggravated by bending down and prolonged sitting, and was relieved by standing up. *Id.* Weakness, an associated symptom, was also noted. *Id.* The examination showed mild lumbar paraspinal tenderness and paraspinal spasms, negative straight leg raising test, normal motor strength, 2+ reflexes and intact sensory examination. X-rays showed degenerative disc disease at L5-S1. *Id.*

[Another progress note from Dr. Chen in July 2009 reported that Siragusa had been going to physical therapy which helped with her pain, but that she continued to have pain and had had a "flare up" the week prior. R 198-200.]

A July 2009 MRI of the lumbar spine showed multilevel degenerative disc space disease, most pronounced at L4-5 and L5-S1. At L5-S1, a concentric disc bulge contacted the right L5 nerve root in the neural foramen. R 18 (citing Exs. 5F, 9F).

A September 2009 note [from Dr. Chen] indicated that Siragusa was seen for low back pain with radiation down the right thigh. *Id.* She reported that her pain was worsening and rated it as a 5 out of 10. Physical therapy helped somewhat, but the pain came back. An MRI of the lumbar spine showed disc bulges at L4-5 and L5-S1 with contact on the right L5 nerve root. R 18-19. The examination showed no midline back tenderness to palpation, normal reflexes in the bilateral lower extremities, negative straight leg raise bilaterally, and no pain with dorsiflexion of toes. Siragusa "failed" conservative treatment, including physical therapy and non-steroidal anti-inflammatory drugs. R 19.

Therefore, an epidural injection was recommended. *Id.* Siragusa received epidural steroid injections in October 2009. *Id.* (citing Ex. 9F).

In a November 2009 progress note [from Dr. Chen], Siragusa reported a 50 percent pain *reduction* after receiving the steroid injections. R 19. She asserted that her pain was a 3 out of 10. She complained of some numbness and weakness in her right leg, and also complained of fatigue and headaches. She was referred to physical therapy. *Id.* (citing Exs. 5F, 9F).

[There is another progress note from Dr. Chen in the record from January 2010. Pain was unchanged from previous visit (rated as 3/10). R 184.]

In March 2010, the state agency consultant [Dr. Joseph Udomsaph] concluded that Siragusa could lift and/or carry 20 pounds occasionally and 10 pounds frequently. R 19 (citing Ex. 2F); *see also* R 170-174. She could stand or walk about 6 hours and sit about 6 hours in an 8 hour day. Her ability to push and/or pull was unlimited. *Id.* The state physician noted that Siragusa was treated in September 2008 and January 2010 for lumbar degenerative disc disease without myelopathy, which was confirmed by lumbar 2-rays and MRI. She had received physical therapy. The physician's examination showed low back pain in in flexion/extension, tenderness and negative straight leg raising. *Id.* She also had asymptomatic mitral valve prolapse. Siragusa was 5 feet 5 inches tall and weighed 192 pounds. She had normal gait, normal motor strength and normal deep tendon reflexes. *Id.* She could climb ramps and stairs, stoop, kneel, crouch and crawl occasionally. She had to avoid "even moderate exposure" to hazards and concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases and poor ventilation. *Id.*[3]

A May 2010 progress note [from Dr. Chen] indicated that Siragusa complained that her back pain was getting progressively worse—she rated it as a 7 out of 10—and that it radiated down the right leg. R 19 (citing Exs. 5F, 9F). Her right leg gave out on her. *Id.* She was taking Tylenol and Naprosyn with minimal benefit. An MRI showed disc bulges at L4-5 and L5-S1 with contact on the right L5 nerve root. Her exam showed full range of motion, lumbar paraspinal tenderness on palpation, and a negative straight leg raising test. Her motor strength was 5 over 5. *Id.* Her reflexes were 2+ bilaterally. Sensory examination was intact to light touch. Siragusa was diagnosed with

---

[3] [ALJ De Steno did not discuss the second disability determination (reconsideration) that was submitted on June 2, 2010 by Norman Schachtel, M.D. R 40. The second determination confirmed the findings of the first determination. *Id.*]

4

["worsening"] displacement of lumbar intervertebral disc without myelopathy, sciatica and lumbosacral syndrome worsening. She was again referred to physical therapy. *Id.*

[The record also contains a June 2010 physical therapy evaluation from Joseph Petnello III at MCRC. R 188. The evaluation stated that Siragusa had "severe" flexion restrictions in both legs; mild to moderate rotation limitation; and mild extension and "SB" limitations." The evaluation also stated that Siragusa's tolerance was limited to less than 10 minutes standing, 5 minutes sitting, and 25 minutes walking. *Id.*; *see also* Pl. Br. at 5.]

[A July 2010 progress note from Dr. Chen indicates that Siragusa continued to have low back pain that radiated to the right leg. Pain was improved after physical therapy, but Siragusa rated it as a 7/10. Her examination showed full range, full motor strength and flexion, and 2+ reflexes. R 227-228]

A December 2010 progress note [from Dr. Israelowitz] indicated that Siragusa had variable pain and was unable to tolerate or afford medications. R 19 (citing Ex. 9F). Her examination showed that she was five feet five ½ inches tall and weighed 194 pounds. Her blood pressure was 125/80. *Id.* Her gait was normal and deep tendon reflexes were normal and symmetric. There was no obvious motor or sensory deficit, but there was "subjective decreased sensation." *Id.* Siragusa's sciatica was stable with persistent pain. She was advised to use a walker or case as necessary for pain relief, and to follow up with an orthopedist. *Id.*

Siragusa's physician, Dr. Chen, also submitted a RFC assessment [dated September 7, 2009]. Dr. Chen reported in that he had seen Siragusa from June 2009 to September 2011. R 20 (citing Ex. 10F). Siragusa was diagnosed with low back pain, sciatica and herniated discs. Her MRI showed herniated nucleus pulposus. Her symptoms included pain, fatigue, anxiety and depression. Her pain was described as "burning, aching and constant" in the lumbosacral region and radiation down both legs. Sitting, standing, walking, bending, and twisting could all worsen the pain. *Id.* Her pain was rated a 6-7 out of 10. *Id.* Dr. Chen stated that Siragusa had diminished range of motion with pain in all ranges and paraspinal tenderness. Treatment for the pain included medication, heating pads, ice, and massage. *Id.* Dr. Chen stated that her impairments lasted or could be expected to last at least 12 months. He also stated that anxiety contributed to the severity of Siragusa's symptoms and functional limitations from January 2008 forward. Siragusa's symptoms were severe

5

enough to interfere "constantly" with attention and concentration. *Id.* She could sit and stand/walk a total of five hours in an eight hour day and she needed to take unscheduled breaks about every 30 minutes for 10 minutes. She also needed to lie down or rest twice a day. *Id.* She needed to use a cane while engaging in occasional standing/walking. She could lift and carry up to five pounds occasionally. She could occasionally use her neck for forward and backward flexion. *Id.* Her impairments were likely to produce "good days" and "bad days" and she was likely to be absent from work more than three times a month because of her impairments or treatments. *Id.*

### B. Ms. Siragusa's Testimony

At the hearing Ms. Siragusa testified about her impairments, work history, and background. R 20. She previously worked as a manager-editor for Amadeus Press (2004-2008) and as a writer-editor at Buyers Laboratory (1995-2000).[4] *Id.* Both jobs were primarily performed while sitting and did not involve lifting or carrying, other than papers or files. *Id.*; *see also* R 118-119 (Work History Report). She stopped working in 2008 because of worsening pain. She was terminated from her position at Amadeus Press for the stated reason of reorganization, but she claims it was because she was taking breaks. *Id.* She looked for other work and had interviews but she had no offers of employment. R 20-21. She then applied for disability. R 21.

Ms. Siragusa testified that she was disabled as a result of back pain, leg pain, leg weakness, and difficulty sitting and standing. R 20. She could sit for 15-30 minutes and be on her feet for 5-10 minutes. She could lift a gallon of water but not carry it. She testified that her condition gradually became worse and that she had episodes where it was much worse. *Id.* She used a cane when she needed it. R 21. She believed that she was not a candidate for surgery because of degeneration of more than one disc in her back. *Id.* She did not take any prescription pain medication but did take over the counter medication. R 20. Her physician reportedly told her that he could not help her anymore because she could not afford the medication. *Id*; R 36.[5]

---

[4]    She also worked as an assistant librarian from November 2002 to March 2003. R 110.

[5]    The progress note from Siragusa's last visit indicates that she was stopping certain medications because she could not afford them. It does not state, however, that the physician declined to treat her. *See* R 225.

6

Siragusa lived alone, and did some cooking and cleaning with help from a friend. She also went shopping with assistance from a friend. She could drive short distances. *Id.* On an average day, she would do physical therapy exercises, including taking an exercise walk with stops to rest. In her free time she read the Bible, prayed, took baths, attempted paperwork or an errand, and read. *Id.*

### IV. The ALJ's Five Step Sequential Analysis

Under the authority of the Social Security Act, the Social Security Administration ("SSA") has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). Siragusa's arguments on appeal focus on the fourth step of the analysis, which weighs the plaintiff's impairments against her ability to do past relevant work to determine her residual functional capacity (RFC). As stated below, they may implicate Step 3 as well.

Proceeding through the five step analysis in his October 4, 2011 decision, the ALJ made the following findings:

> ***Step 1****: Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.*

At Step 1, the ALJ found that Siragusa met the insured status requirements of the Social Security Act through June 13, 2013. R 17. He also found that she had not engaged in "substantial gainful activity" since her alleged onset date of September 1, 2008. *Id.* (citing 20 CFR 404.1571).

> ***Step 2****: Determine if the claimant's alleged impairment, or combination of impairments, is "severe." Id. §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.*

ALJ De Steno found that Siragusa had severe impairments involving lumbar disc disease, sciatica, mitral valve prolapse, and obesity. R 17 (citing 29 CFR 404.1520(c)).

> ***Step 3****: Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments.*

7

> *20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits; if not, move to step four. Id. §§ 404.1520(d), 416.920(d).*

At Step 3, ALJ De Steno found that Siragusa did not have an impairment or combination of impairments that "meets or medically equals" the severity of any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. R 17 (citing 20 CFR 404.1520(d), 404.1525, 404.1526).

The ALJ stated that he gave particular attention to the listing in section 1.04 (in connection with Siragusa's lumbar disc disease and sciatica), but that the specified criteria were not established by the available medical evidence. *Id.* The ALJ found that the medical evidence did not establish nerve root compression, spinal arachnoiditis or lumbar spinal stenosis under listing 1.04. *Id.* ALJ De Steno also found that the criteria of Section 4.00, relating to cardiovascular impairments, were also not met. *Id.*

As to Siragusa's claim of obesity, the ALJ evaluated the impairment pursuant to the guidelines set forth in SSR 02-1p, as well as sections 1.00Q, 3.00I, and 4.00F. He stated that he "fully evaluated" the evidence of obesity in the context of the overall evidence in the record. R 17-28 (citing SSR 02-1p which states, "... [W]e will not make assumptions about the severity of functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment.").

> **Step 4**: *Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. Id. §§ 404.1520(e)-(f), 416.920(e)-(f). If not, move to step five.*

At Step 4, ALJ De Steno found that Siragusa had the residual functional capacity ("RFC") for lifting and carrying objects weighing up to 10 pounds, sitting up to six hours, and standing and walking up to two hours in an eight-hour day, and the full range of sedentary work. R 18. He did not find that Siragusa had any significant non-exertional limitations. *Id.* In making this finding the ALJ stated that he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. *Id.* He also stated that he

8

considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. *Id.*

In light of her RFC, ALJ De Steno found that Siragusa was capable of performing her past relevant work as a manager/editor for Amadeus Press and as an editor/writer for Buyers Laboratory. R 20 (citing Siragusa's testimony at hearing). Both of these positions were sedentary.

ALJ De Steno followed the two-step process in which the ALJ must first determine whether there is an underlying medically determinable physical or mental impairment (i.e. an impairment that can be shown by medically acceptable clinical and laboratory diagnostic techniques) that could reasonably be expected to produce the claimant's pain or other symptoms. R 18. Second, the ALJ must evaluate the "intensity, persistence, and limiting effects" of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. *Id.* For this purpose, if statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by the record, the ALJ must make a finding on the credibility of the statements based on consideration of the entire record. *Id.*

The ALJ thoroughly summarized the evidence of Siragusa's impairment in his decision. The evidence he considered included Siragusa's testimony at the hearing, medical progress notes from New Jersey Physicians LLC, results of MRIs and X-rays, evidence of steroid injections she had received as treatment, and RFC assessments: one from her treating physician, Dr. Chen, and one from the state agency physician. R 18-21. He did not reference or rely on Siragusa's "pain diaries" or a third party statement from her friend. He also does not refer to a physical therapy evaluation of Siragusa from June 21, 2010.

> **Step 5**: *The burden shifts to the SSA to demonstrate that the claimant, considering his or her age, education, work experience, and RFC, is capable of performing other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); see Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 91–92 (3d Cir. 2007). If so, DIB will be denied; if not, they will be awarded.*

At Step 5, because the ALJ had found that Siragusa could perform past relevant work, he did not address whether she was capable of performing other jobs in the national economy. *See* R 21.

## V. Issues Presented by Plaintiff

### A. Ms. Siragusa's Credibility

Based on the evidence in the record, ALJ De Steno found that Ms. Siragusa's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. He found, however, that her statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they were inconsistent with his finding of RFC. R 20. Siragusa disputes this finding and argues that the ALJ did not properly assess her credibility (or take into account the medical evidence in the record, especially that of her treating physician, *see* § V.B, *infra*). Pl. Br. at 9. Siragusa also points out that the ALJ did not discuss Siragusa's pain diary or the "third party statement" of her friend Mr. Shustowicz. Pl. Br. at 10.

When making credibility findings, the ALJ must indicate which evidence he relies on and which he rejects. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir.1999). Pursuant to Section 404.1529(b), allegations of subjective symptoms must be supported by objective medical evidence. SSR 96–7p, too, makes it clear that the claimant's statements about symptoms, unless corroborated by medical evidence, are not sufficient to establish disability.

Here, the ALJ expressly found that Siragusa's subjective statements regarding the intensity, persistence, and limiting effects of her symptoms were not supported by the evidence of record. In so finding, the ALJ discussed Siragusa's testimony at the hearing, including her assertions that she could sit for only 15-30 minutes and stand for only 5-10 minutes at a time. R 20-21.

In support of those credibility findings, the ALJ properly considered the medical evidence before him, including the medical records from Dr. Chen and Dr. Israelowitz, as well as diagnostic tests confirming the diagnoses. He also reviewed the competing RFC assessments of Dr. Chen and the state agency medical consultant, Dr. Joseph Udomsaph. The ALJ gave "no weight" to the RFC assessment of Dr. Chen. R 21 (citing Ex. 10F). He explained that the assessment was a "scratch sheet check-off form" with no "probative evidentiary value" that was based primarily on Siragusa's subjective complaints of pain. *Id.*

10

He also noted that Siragusa testified that Dr. Chen discharged her as a patient because she could not afford the pain medication he prescribed. *Id.*[6]

The ALJ did explicitly rely on the assessment of the state agency consultant, Dr. Udomsaph. R 21; *see also* R 170-179 (State Agency RFC). Dr. Udomsaph found that Plaintiff had lumbar degenerative disc disease. But despite her lower back pain, he observed that she had no gross deformity, negative straight leg raising, and normal gait, heel and toe walk, motor strength and deep tendon reflexes. R 170-177. Dr. Udomsaph found that Siragusa could lift and carry 20 pounds occasionally and 10 pounds frequently, and that she could stand, walk, or sit for about six hours each in the course of an eight hour work-day. *Id.*[7]

That said, Ms. Siragusa makes some valid points. There is room for improvement as to the specificity of credibility findings. The ALJ did not analyze which subjective statements by Siragusa were unsupported and give a specific reason why each statement was not credible. And it is true that the ALJ did not explicitly discuss Siragusa's pain diaries or the statement of her friend Mr. Shustowicz, both which Siragusa claims weigh in favor of her credibility. The ALJ's failure to use a particular format to analyze Siragusa's credibility, however, does not rise to the level of an error requiring remand in this case. *See Jones v. Barnhart*, 364 F.3d 505, 505 (3d Cir. 2004).

The ALJ did identify the particular medical opinion evidence on which he relied and the evidence he rejected. He discussed the progress notes and other medical evidence in the record in detail. *See* R 18-21. That he did not apply the analysis to each of Siragusa's subjective complaints, statement-by-statement, is not fatal. The required analysis clearly took place here.

---

[6]    I note in addition that Dr. Chen's assessment is not consistent with his own numerous progress notes. *See* n.9, *infra.*

[7]    Dr. Udomsaph also stated that, because of her mitral valve prolapse, Ms. Siragusa should observe certain environmental limitations: *i.e.*, avoid concentrated exposure to extreme temperature, wetness, humidity, fumes, odors, dusts, gases, and ventilation. R 174. The ALJ, while relying on Dr. Udomsaph's findings in general, did not give any weight to those latter environmental limitations, which were not supported by objective medical evidence. R 21. He noted, however, that the RFC would be unaffected either way, because Siragusa's past relevant work was performed in a hazard-free office environment. *Id.*

11

The ALJ's failure to discuss (1) the "third party statement" of Shustowicz and (2) Siragusa's "pain diary" poses a more serious concern, but ultimately does not dictate that the ALJ's credibility determination was flawed. These items clearly do not constitute objective medical evidence, but as non-medical evidence they do merit consideration by the ALJ. *See Burnett v. Commissioner of Soc. Sec. Admin.*, 220 F.3d 112, 121-22 (3d Cir. 2000) (setting aside ALJ determination where contradictory medical and non-medical evidence was not mentioned or refuted); *Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir. 1994) (discussing medical evidence).

The "pain diary" does not add much, in my view; it is cumulative of Siragusa's subjective complaints, which were thoroughly considered by the ALJ. *See* R 157-161 (describing symptoms in June, July, and September-December of 2010 and April 2011). Moreover, the diary is not a completely contemporaneous record of her sense impressions; Siragusa noted that she created part of it from memory. R 160.

Shustowicz's third party statement should have been considered by the ALJ. Although cumulative, it does come from a third party, and therefore may be considered as corroboration of Siragusa's own statements.[8] Shustowicz reported that Siragusa has to "rise often" when seated, has limitations standing and walking, and needs assistance with household tasks and errands. R 129, 130. He also reported that Siragusa used a cane "fairly often" and that her leg gives way. R 134.

The ALJ's failure to consider the MRC physical therapy report from June 21, 2010 may also be in error because it tends to support Siragusa's subjective views on her own limitations (i.e. that she could only sit for short periods of time). *See* R 188. Plaintiff notes this evidence in her brief, but does not rely it in connection with her credibility assessment argument. *See* Pl. Br. at 10. The evaluation contains an objective assessment of Siragusa's limitations and positional tolerance. Physical Therapist Petnello found that Siragusa had mild to severe lumbar limitations. He also found that she could only stand for less than 10 minutes, sit for five minutes and walk for less than 25 minutes at a time. *Id.*

Despite the ALJ's failure to consider this evidence, remand is not required here because it would not affect the outcome of the case. *Rutherford v.*

---

[8] *Compare* Shustowicz Third Party Function Report dated July 8, 2010 *with* Siragusa's Function Report dated July 7, 2010. R 126-135; R 136-143.

*Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Shustowicz's statement is generally consistent with the other evidence in the record, which *was* considered. Overall, the ALJ's findings exceed a mere boilerplate statement of Siragusa's credibility and are supported by substantial evidence of record. *See* SSR 96-7P; *see also Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 618 (3d Cir. 2009) (finding that ALJ properly discounted claimant's testimony by basing finding on the specific medical evidence in the record). The ALJ considered the medical and other evidence in depth, and in relation to Siragusa's statements, and discussed it cogently. I am persuaded that any error is harmless.

### B. Evidence from Treating Physician

Ms. Siragusa also argues that the ALJ did not give appropriate weight to the opinion of her treating physician, Dr. Chen. Pl. Br. at 11. Medical opinions are properly considered together with the rest of the relevant evidence in the record. 20 CFR § 404.1520(b). Opinions from treating sources are generally given more weight, and are given controlling weight if the ALJ finds that a treating source's opinion on the nature and severity of the claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 CFR § 404.1527(c)(2).

As discussed above, ALJ De Steno decided not to give controlling weight to Dr. Chen's "extremely restrictive" assessment. The ALJ made that decision on a proper basis: because Dr. Chen's assessment was primarily based on Siragusa's subjective complaints and was not consistent with the medical evidence in the record. R 21. In contrast, the ALJ found that the state agency consultant's competing assessment *was* supported by the evidence as a whole. Such a comparison is not just permitted but necessary where there are competing assessments. *Cotter v. Harris*, 642 F.2d 700, 705 (3d. Cir. 1981) ("when the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them"). The ALJ also measured Dr. Chen's assessment against the other evidence of record, including the medical evidence. Dr. Chen's RFC form was not consistent with that medical evidence.[9]

---

9     Including (although the ALJ did not note this) Dr. Chen's own progress notes In the progress notes, Siragusa's pain was variable—ranging from a 3 to 7 out of 10. She also was reported as showing full range of motion and reflexes. Chen's RFC assessment descriptions of her "diminished ROM with pain in all ranges" and rare to occasional ability to flex forward or backward (looking up or down) or rotating right and left (looking sideways), are not supported by any of the other medical records he submitted. *See* R 290-97.

13

In light of the inconsistency, the ALJ properly justified his decision that he would not give Dr. Chen's assessment "controlling weight."

In sum, the ALJ's treatment of the evidence from Dr. Chen comported with the requirements of 20 CFR § 404.1527(c)(2) and is consistent with the substantial evidence in the record.

## VI. Conclusion

The ALJ's decision comports with the substantial evidence in the record. It is affirmed. An appropriate order accompanies this opinion.

Dated: August 1, 2014

**Hon. Kevin McNulty**
**United States District Judge**